E-FILED
THURSTON COUNTY, WA
SUPERIOR COURT
12/18/2025 - 4:15PM
Linda Myhre Enlow
Thurston County Clerk

1

2

3

4

5

6

7

## SUPERIOR COURT OF THE STATE OF WASHINGTON
### THURSTON COUNTY

8

9   CEDARLAND HOMES LLC; ANDREW
LAN2310 YALE APTS., LLC;
WEST/FREEMAN PROPERTIES, L.L.C.;
10   KENMORE VILLAGE 2017, LLC; DANA
MACKENZIE; SCOTT MACKENZIE;
11   CHUNFU SIMON WU; KARL JACOBS; JOHN
BARRETT; JENNIFER BARRETT; STEVE
12   OTTEN; BEACON FLATS PROPERTIES LLC;

13          Plaintiffs,

14       v.

15   GOVERNOR ROBERT FERGUSON; the
STATE OF WASHINGTON; the CITY OF
16   SEATTLE; KING COUNTY; the CITY OF
BELLEVUE; the CITY OF KENMORE; the
17   CITY OF BURIEN; the CITY OF KIRKLAND;
the CITY OF OLYMPIA; the CITY OF
18   EVERETT; and the CITY OF SPOKANE,

19          Defendants.

No. **25-2-06221-34**

**CLASS ACTION COMPLAINT**

DEMAND FOR JURY TRIAL

20

21   Plaintiffs, individually and on behalf of all others similarly situated, allege as follows:

22   ## I.   INTRODUCTION

23       1.    During the COVID-19 pandemic, the State of Washington, acting through the

24   Office of the Governor of Washington State (collectively, the "State") and certain local

25   governments—including King County and the cities of Seattle, Bellevue, Burien, Everett,

26   Kenmore, Kirkland, Olympia, and Spokane (collectively, the "Local Government

27   Defendants")—effected government takings on an unprecedented scale through a series of

CLASS ACTION COMPLAINT - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  executive orders and enactments that forced Plaintiffs and other similarly situated property

2  owners to provide housing to former tenants whose contractual right to occupy the premises had

3  terminated and who otherwise would have been evicted.

4          2.      For over a year, these orders and enactments (the "Moratoria") barred Plaintiffs

5  from excluding individuals from their property who refused to pay rent for any (or no) reason

6  and precluded Plaintiffs from recovering late fees or other contractually authorized charges for

7  delinquent payments.  Indeed, the Moratoria took Plaintiffs' property for public use regardless of

8  any tenant's actual ability to pay rent and without considering whether the tenant would be

9  capable of paying back rent when theoretically required to do so at the expiration of the

10  Moratoria.  The Moratoria thus left Plaintiffs with no effective recourse to pursue reimbursement

11  from tenants and encouraged tenants—even those capable of paying some or all rent—to cease

12  rent payments and occupy Plaintiffs' property without compensation for the duration of the

13  pandemic.  Thus, Defendants compelled Plaintiffs to allow tenants-turned-trespassers to occupy

14  Plaintiffs' property without receiving compensation—while Plaintiffs remained liable for all

15  property taxes, mortgage payments, maintenance costs, and utility charges for a property they no

16  longer controlled.  This government-compelled physical occupation of Plaintiffs' property

17  constituted a *per se* taking under the Fifth Amendment to the United States Constitution.

18          3.      Defendants failed to provide the constitutionally guaranteed just compensation for

19  that taking.  The limited reimbursement that some Defendants provided to some property owners

20  was subject to low, arbitrary caps and other limitations that prevented Plaintiffs from receiving

21  just compensation.  For example, the State's "landlord mitigation program" capped state-funded

22  reimbursement at $15,000 regardless of the full extent of Plaintiffs' losses resulting from the

23  deprivation of their essential right to exclude unwanted individuals from their property.  And

24  accepting even this limited reimbursement barred a property owner from even attempting to

25  obtain repayment from the breaching tenant.  In short, after taking Plaintiffs' property rights, the

26  State forced them to choose between two inadequate remedies that failed to provide the just

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

compensation to which they were entitled.  As a result, Plaintiffs have suffered hundreds of thousands of dollars in losses.

4.       Plaintiffs therefore seek just compensation in this case on behalf of themselves and a class of all other property owners who were subject to the Moratoria, were prevented from evicting a tenant for nonpayment of rent, and who failed to receive just compensation for Defendants' taking.

## II.       PARTIES

5.       Cedarland Homes LLC ("Cedarland") is a Washington limited liability company. Cedarland owns property located within the State of Washington that it leases to tenants subject to the terms of rental agreements.

6.       Andrew Lan is an individual residing in the State of Washington.  Andrew Lan owns property in the State of Washington, including property in King County, that he leases to tenants subject to the terms of rental agreements.

7.       2310 Yale Apts., LLC ("Yale") is a Washington limited liability company organized in the State of Washington. Yale owns property in the State of Washington, including property in the City of Seattle and King County, that it leases to tenants subject to the terms of rental agreements.

8.       West/Freeman Properties, L.L.C. is a Washington limited liability company organized in the State of Washington.  West/Freeman owns property in the State of Washington, including property in the City of Bellevue and King County, that it leases to tenants subject to the terms of rental agreements.

9.       Kenmore Village 2017, LLC ("Kenmore Village") is a Washington limited liability company organized in the State of Washington.  Kenmore Village owns property in the State of Washington, including property in the City of Kenmore and King County, that it leases to tenants subject to the terms of rental agreements.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

10.     Dana and Scott MacKenzie are individuals residing in the State of Washington. The MacKenzies own property in the State of Washington, including property in the City of Burien and King County, that they lease to tenants subject to the terms of rental agreements.

11.     Chunfu Simon Wu is an individual residing in the State of Washington.  Wu owns property in the State of Washington, including property in the City of Kirkland and King County, that he leases to tenants subject to the terms of rental agreements.

12.     Karl Jacobs is an individual residing in the State of Washington. Jacobs owns property in the State of Washington, including property in the City of Olympia, that he leases to tenants subject to the terms of rental agreements.

13.     John and Jennifer Barrett are individuals residing in the State of Washington.  The Barretts own property in the State of Washington, including property in the City of Everett, that they lease to tenants subject to the terms of rental agreements.

14.     Steve Otten is an individual residing in the State of Washington.  Otten owns property in the State of Washington, including property in the City of Spokane, that it leases to tenants subject to the terms of rental agreements.

15.     Beacon Flats Properties LLC ("Beacon Flats") is a limited liability company organized in the State of Washington.  Beacon Flats owns property in the State of Washington, including property in King County, that it leases to tenants subject to the terms of rental agreements.

16.     Defendant Robert Ferguson is the current Governor of the State of Washington, and the successor to Governor Jay Inslee, who issued the State's Moratoria.

17.     The State of Washington is a duly organized state government within the United States of America.

18.     King County is a duly organized Washington municipal corporation.

19.     The City of Seattle is a duly organized Washington municipal corporation.

20.     The City of Bellevue is a duly organized Washington municipal corporation.

21.     The City of Burien is a duly organized Washington municipal corporation.

CLASS ACTION COMPLAINT - 4

1    22.    The City of Everett is a duly organized Washington municipal corporation.

2    23.    The City of Kenmore is a duly organized Washington municipal corporation.

3    24.    The City of Kirkland is a duly organized Washington municipal corporation.

4    25.    The City of Olympia is a duly organized Washington municipal corporation.

5    26.    The City of Spokane is a duly organized Washington municipal corporation.

6                        **III.    JURISDICTION AND VENUE**

7    27.    This Court has jurisdiction over this matter under Article IV, Section 6 of the

8    Washington Constitution and RCW 2.08.010 because jurisdiction has not been vested

9    exclusively by law in another court.

10    28.    Venue is proper in this Court because some part of this case arose in Thurston

11    County and includes a cause of action against a public officer for acts done in virtue of his

12    office. RCW 4.12.020.

13                        **IV.    FACTS**

14    **A.    The Outbreak of COVID-19.**

15    29.    In 2020, the federal government—in reaction to the economic pressures caused

16    by the response of various levels of government to the COVID-19 pandemic—passed the

17    Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") which provided $2.2

18    trillion in economic stimulus.  Many of those funds were distributed to the states in order to

19    protect their citizens, stimulate the consumer economy, and provide assistance to those who were

20    affected by an inability—or significantly decreased ability—to earn a living.

21    30.    Not all public relief was provided at public expense, however. To the contrary,

22    Defendants forced private property owners to bear the public burden of providing housing

23    without compensation. As a result, rental property owners—who faced the same economic

24    realities as everyone else during the pandemic—were forced to endure the additional

25    government-imposed costs in the form of the Moratoria.

26

27

CLASS ACTION COMPLAINT - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**B.     The Moratoria Take Property Owners' Right to Exclude.**

        **1.     The State's Moratoria.**

31.     On March 18, 2020, then-Governor Inslee issued Proclamation 20-19.[1]  In relevant part, the Order purported to suspend provisions of state law that would allow the providers of residential rental housing to evict tenants even if they were able to pay rent but chose not to do so.  The Proclamation was originally set to expire on April 17, 2020.

32.     However, on April 16, 2020, the Governor issued Proclamation No. 20-19.1, extending the duration and expanding the scope of this taking.[2]  This proclamation contained multiple provisions that violated Plaintiffs' constitutional rights, including:

        a.     A prohibition on evictions, unless the lessor (a) provided an affidavit that the eviction was necessary to respond to a significant and immediate risk to the health, safety, or property of others created by the resident; or (b) provided at least 60 days' written notice of intent to (i) personally occupy the premises as a primary residence, or (ii) sell the property.

        b.     A prohibition on imposing fees for late payment and the inability to treat unpaid rent as a debt or financial obligation. The inability to treat unpaid debt as a financial obligation of the tenant was lifted only if the lessor offered the tenant—and the tenant refused or failed to comply with—a repayment plan that was "reasonable based on the individual financial, health, and other circumstances" of that resident.  However, there was no corresponding obligation of tenants to cooperate with the development of a repayment plan and tenants could refuse to provide information that would enable the creation of a repayment plan that was reasonable based on the tenant's financial, health and other circumstances.

---

[1] Proclamation 20-19, *available at*:
https://www.governor.wa.gov/sites/default/files/proclamations/20-19%20-%20COVID-19%20Moratorium%20on%20Evictions%20%28tmp%29.pdf
[2] Proclamation 20-19.1, *available at*:
https://www.governor.wa.gov/sites/default/files/proclamations/20-19.1 - COVID-19 Moratorium on Evictions Extension %28tmp%29.pdf

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    33.    The Governor repeatedly amended and extended the Moratoria through

2  Proclamation 20-19.1 (April 16, 2020),[3] Proclamation 20-19.2 (June 2, 2020),[4] Proclamation 20-

3  19.3 (July 24, 2020),[5] Proclamation 20-19.4 (October 14, 2020),[6] Proclamation 20-19.5

4  (December 31, 2020),[7] and Proclamation 20-19.6 (March 18, 2021).[8]  With minor variations, the

5  restrictions described above were included in each of the Moratoria.  Collectively, these

6  restrictions barred evictions from March 18, 2020 to June 30, 2021.

7    34.    On June 29, 2021, the Governor issued the "Bridge Proclamation," which

8  continued to prohibit evictions based on nonpayment of rent that accrued between February 29,

9  2020, through July 31, 2021.[9]  The Bridge Proclamation also prohibited evictions based on

10  nonpayment of rent accruing on or after August 1, 2021 under a broad set of circumstances.

11  These restrictions remained in effect until the Bridge Proclamation expired on October 31, 2021.

12    35.    Additionally, RCW 59.18.625 prohibited collecting "any late fees or other

13  charges . . . for the nonpayment of rent that became due" between March 1, 2020 and December

14  31, 2021.

15

16

17

18  [3] Proclamation 20-19.1, *available at*:
    https://www.governor.wa.gov/sites/default/files/proclamations/20-19.1 - COVID-19 Moratorium
19  on Evictions Extension %28tmp%29.pdf
    [4] Proclamation 20-19.2, *available at*: https://www.governor.wa.gov/sites/default/files/20-19.2
20  Coronavirus Evictions %28tmp%29.pdf?utm_medium=email&utm_source=govdelivery
    [5] Proclamation 20-19.3, *available at*:
21  https://www.governor.wa.gov/sites/default/files/proclamations/20-19.3 Coronavirus Evictions
22  %28tmp%29.pdf
    [6] Proclamation 20-19.4, *available at*:
23  https://www.governor.wa.gov/sites/default/files/proclamations/proc_20-19.4.pdf
    [7] Proclamation 20-19.5, *available at*:
24  https://www.governor.wa.gov/sites/default/files/proclamations/proc_20-19.5.pdf
    [8] Proclamation 20-19.6, *available at*:
25  https://www.governor.wa.gov/sites/default/files/proclamations/proc_20-19.6.pdf. A true and
26  correct version of Proclamation 20-19.6 is attached hereto as Appendix A.
    [9] Proclamation 21-09, *available at*:
27  https://governor.wa.gov/sites/default/files/proclamations/proc_21-09.pdf

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**2.    The Local Government Defendants' Moratoria.**

36.    The Local Government Defendants imposed similar restrictions that extended the duration of the takings even after the expiration of the State's Moratoria.

**a.    City of Seattle**

37.    Seattle Mayor Jenny A. Durkan imposed a moratorium on residential evictions through a March 16, 2020 civil emergency order.  Similar to the statewide proclamations, the City's moratorium forbade eviction unless the eviction was "due to actions by the tenant constituting an imminent threat to the health or safety of neighbors, the landlord, or the tenant's or landlord's household members."  The order also prohibited landlords from collecting late fees or other charges due to late payment of rent during the moratorium.  Mayor Durkan repeatedly extended the moratorium through Executive Orders 2020-05, 2020-06, 2020-09, 2020-12, 2021-06, and 2021-07.

38.    Additionally, on May 4, 2020, the Seattle City Council enacted Ordinance No. 126075, which created a defense in eviction actions that essentially barred evictions for nonpayment of rent within six months after the City's eviction moratorium expired.  Specifically, where an eviction action based on nonpayment of rent would result in the tenant needing to vacate the unit within six months of expiration of the moratorium, the tenant could invoke a defense against eviction by submitting a declaration or self-certification of financial hardship. Eviction notices based on nonpayment of rent had to notify the tenant of this defense, and the failure to do so was itself a defense to eviction.

39.    The City followed these with Ordinance No. 126081, adopted May 11, 2020, which allowed tenants to pay overdue rent in installments and deemed the failure to accept an installment payment to be a defense against eviction (as was the failure to notify the tenant of this right in an eviction notice).  The ordinance also prohibited landlords from charging late fees, interest, or other charges due to the late payment of rent during or within one year after the termination of the emergency order.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

40.     Yet another ordinance, Ordinance 126368, extended restrictions on evictions until October 31, 2022.

**b.      Other Local Government Defendants' Moratoria**

41.     Like Seattle, each of the other Local Government Defendants adopted ordinances that created defenses or otherwise barred evictions based on unpaid rent accruing during—and in some cases, after—the effective period of the Governor's State of Emergency Proclamation.

**3.      The Effect of Defendants' Moratoria.**

42.     While purportedly intended to provide relief to tenants impacted by the pandemic, the Moratoria were not tailored to a tenant's actual inability to pay rent.  Moreover, the Moratoria provided no relief for housing providers and required them to continue meeting their contractual and statutory obligations as lessors—even as the Moratoria abrogated the material obligations of lessees and eliminated all contractual remedies housing providers ordinarily have available when tenants breach their lease provisions.  Due to the Moratoria, tenants could continue to occupy property despite having no ongoing permission or contractual right to do so, while shifting the cost of utilizing water, power, trash, sewage, and other services for which the housing providers continued to pay without reimbursement.

43.     The Moratoria banned the most essential remedy on which property owners rely to mitigate their damages when tenants fail to pay rent—and then went a step further by proclaiming that such nonpayment cannot be enforced as a debt or legal obligation.  Every month a housing provider was prevented from renting its unit to a paying tenant was a month for which the housing provider lost revenue and could not mitigate any damages.  Thus, the Moratoria forced property owners to allow nonpaying former tenants to occupy their property without compensation for an indeterminate and often lengthy period.  This compelled physical occupation constituted a taking of property owners' right to exclude.

**C.      Washington Failed to Provide Just Compensation.**

44.     The Moratoria did not directly provide *any* compensation to affected property owners.  Nor did Defendants provide just compensation through other measures.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    45.    For example, the limited reimbursement temporarily available under Defendants'

2  "landlord mitigation program" fell far below Defendants' obligations under the United States

3  Constitution.  Signed into law on April 22, 2021, SB 5160 allowed landlords to seek

4  "reimbursement from the landlord mitigation program account"—until the meager funding

5  Defendants allocated to the program ran out.  RCW 43.31.605(1) .[10]  Specifically, landlords

6  could make:

7                Claims related to unpaid rent for:

8                (A) Up to $15,000 in unpaid rent that accrued between March 1,
                 2020, and six months following the expiration of the eviction
9                moratorium and the tenant being low-income, limited resourced or
                 experiencing hardship, voluntarily vacated or abandoned the
10               tenancy; or

11               (B) Up to $15,000 in remaining unpaid rent if a tenant defaults on
                 a repayment plan entered into under RCW 59.18.630, are eligible
12               for reimbursement from the landlord mitigation program account
                 subject to the program requirements under this section, provided
13               the tenancy has not been terminated at the time of reimbursement"

14  RCW 43.31.605(1)(c)(i).  Further, any landlord that sought reimbursement—even partial

15  reimbursement—under SB 5160 was "prohibited from: . . . [t]aking legal action against the

16  tenant for damages or any remaining un-paid rent accrued between March 1, 2020, and six

17  months following the expiration of the eviction moratorium attributable to the same tenancy[.]"

18  RCW 43.31.605(1)(c)(iii)(A).[11]

19    46.    In other words, after precluding landlords from exercising their constitutionally

20  protected right to exclude, *Ala. Ass'n of Realtors*, 594 U.S. at 766 (quoting *Loretto v.*

21  *Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 425 (1982)), Defendants provided a

22

---

23  [10] *See* https://lawfilesext.leg.wa.gov/biennium/2021-22/Pdf/Bills/Session%20Laws/Senate/5160-
24  S2.SL.pdf#page=1.
    [11] The law also prohibited "[p]ursuing collection, or authorizing another entity to pursue
25  collection on the landlord's behalf, of a judgment against the tenant for damages or any
    remaining unpaid rent" accruing during the same time period. RCW 43.31.605(1)(c)(iii)(B). SB
26  5160 also rendered landlords ineligible for reimbursement "where the tenant vacated the tenancy
    because of an unlawful detainer action under Wash. Rev. Code § 59.12.030(3)." RCW
27  43.31.605(1)(c)(ii).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

maximum of $15,000 in compensation—irrespective of the actual damages caused by the eviction moratorium.  Moreover, Defendants conditioned that "assistance" upon the landlord's tolerance of the breaching tenancy's continuation up through the date of collection of the assistance, (RCW 43.31.605(1)(c)(i)(B)), and expressly waiving their right to take legal action to recoup the difference in damages caused by nonpayment of rent and the $15,000 assistance payment or otherwise attempting to collect any rent shortfall, RCW 43.31.605(1)(c)(iii)(A) & (B).  Thus, Washington's landlord compensation program required aggrieved landlords to waive their due process rights and access to other state and federal programs in exchange for a claim for no more than $15,000.  This fig leaf of a program provided little assistance to the landlords it compelled to carry the public burden of housing Washingtonians during the COVID-19 pandemic.

**D.      The Washington Supreme Court Erroneously Holds that the State's Moratoria Are Not Takings Under Washington Law.**

47.      Washington's refusal to take the necessary steps to compensate property owners flowed from its mistaken belief that no compensation was legally required—a belief that the Washington Supreme Court endorsed in *Gonzales v. Inslee,* 2 Wn. 3d 280, 295–96 (2023). There, the court acknowledged "that the petitioners have been made to bear the cost of accommodating a public need" but nevertheless rejected the claim that the Moratoria constituted a taking under the Washington Constitution based on an erroneous interpretation of the federal Takings Clause.  *Id.* at 297 n.9 (citing *Yee v. City of Escondido,* 503 U.S. 519 (1992); *Cedar Point Nursery v. Hassid,* 594 U.S. 139 (2021)).  But two federal circuit courts have reached the opposite conclusion when directly applying federal law.  *See Heights Apartments, LLC v. Walz*, 30 F.4th 720, 733 (8th Cir. 2022); *Darby Dev. Co., Inc. v. United States*, 112 F.4th 1017, 1034-37 (Fed. Cir. 2024).  Under the correct application of federal law as recognized by the Eighth and Federal Circuits, the Moratoria constitute *per se* takings and Plaintiffs and similarly situated property owners are entitled to just compensation.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

48.    To the extent *Gonzales* construed federal Takings Clause precedent to foreclose compensation for eviction moratoria, such construction conflicts with the United States Supreme Court's decisions in *Loretto*, *Cedar Point*, and other cases, as well as the Eighth and Federal Circuits' applications of those precedents.

49.    Although Plaintiffs' claims are based on the United States Constitution and are not directly foreclosed by *Gonzales*, Plaintiffs recognize that the courts of the State of Washington will likely conclude the Washington Supreme Court's interpretation of federal law bars Plaintiffs' claims.  Plaintiffs certify that their claims are warranted by existing law, as well as a good faith argument for the modification or reversal of the Washington Supreme Court's erroneous application of that law in *Gonzales*.

**E.    Plaintiffs' Right to Exclude Was Taken by the Moratoria Without Just Compensation.**

50.    All of the Plaintiffs own property located within the State of Washington and within the boundaries of one or more Local Government Defendants.  Each Plaintiff leases designated portions of their property to tenants subject to the term of lease agreements.  Under the terms of those lease agreements, each tenant is permitted to enter and remain on the property owned by a Plaintiff in exchange for making periodic rental payments.  Absent this contractual arrangement, none of these tenants would have the right to enter or remain on Plaintiffs' property.  As set forth in each lease agreement, a tenant's failure to make monthly rental payments constitutes a material breach and terminates the tenant's contractual right to enter and remain on Plaintiffs' property.  Individuals who breach their lease agreements with Plaintiffs by failing to pay rent are also contractually obligated to pay late fees and interest on that accrued rent.

51.    Since the onset of the COVID-19 pandemic, each of the Plaintiffs has experienced one or more tenants failing to make required rent payments.  However, Defendants' Moratoria prohibited Plaintiffs from evicting these individuals and entering new lease agreements with paying tenants.  Instead, Defendants compelled Plaintiffs to allow these

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   individuals to occupy Plaintiffs' property despite the termination of Plaintiffs' contractual

2   relationship with these individuals.  The State also prohibited Plaintiffs from collecting interest

3   and late fees on unpaid rent to which Plaintiffs are entitled under their lease agreements.

4          52.    Defendants' actions violated the Takings Clause.  The Moratoria allowed

5   Defendants to appropriate for public use a possessory leasehold interest in Plaintiffs' property

6   and transferred that interest to other parties without compensation.  The compelled continued

7   occupancy by defaulting tenants constituted a government-mandated leasehold imposed over

8   Plaintiffs' objections.  The Takings Clause prohibits the government from taking a leasehold

9   interest for public use without paying just compensation, regardless of whether the taking is

10  characterized as a termination, extension, or substitution of contractual rights.

11         53.    Each Defendant independently enacted and enforced eviction restrictions that,

12  standing alone, barred Plaintiffs from exercising their right to exclude nonpaying occupants.

13  Where multiple Moratoria overlapped in time, each Defendant's actions were a sufficient cause

14  of Plaintiffs' injuries.  Plaintiffs' damages are therefore attributable to each Defendant whose

15  Moratoria independently prohibited eviction, and Defendants are jointly and severally liable for

16  the taking of Plaintiffs' property rights.

17         54.    Cedarland owns property in the State of Washington.  By imposing the Moratoria,

18  Defendants deprived Cedarland of its right to exclude others from its property and compelled it

19  to provide housing to individuals who did not pay rent.  Due to the Moratoria, Cedarland was

20  unable to evict these individuals.  As a result of this taking, Cedarland incurred tens of thousands

21  of dollars in lost rent, interest, late fees, and other unpaid compensation.

22         55.    Andrew Lan owns property in the State of Washington, including property in

23  King County.  By imposing the Moratoria, Defendants deprived Lan of his right to exclude

24  others from his property and compelled him to provide housing to individuals who did not pay

25  rent.  Due to the Moratoria, Lan was unable to evict these individuals.  As a result of this taking,

26  Lan incurred tens of thousands of dollars in lost rent, interest, late fees, and other unpaid

27  compensation.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

56.     Yale owns property in the State of Washington, including property in the City of Seattle and King County.  By imposing the Moratoria, Defendants deprived Yale of its right to exclude others from its property and compelled it to provide housing to individuals who did not pay rent.  Due to the Moratoria, Yale was unable to evict these individuals.  As a result of this taking, Yale incurred thousands of dollars in lost rent, interest, late fees, and other unpaid compensation.

57.     West/Freeman owns property in the State of Washington, including property in the City of Bellevue and King County.  By imposing the Moratoria, Defendants deprived West/Freeman of its right to exclude others from its property and compelled it to provide housing to individuals who did not pay rent.  Due to the Moratoria, West/Freeman was unable to evict these individuals.  As a result of this taking, West/Freeman incurred tens of thousands of dollars in lost rent, interest, late fees, and other unpaid compensation.

58.     Kenmore Village owns property in the State of Washington, including property in the City of Kenmore and King County.  By imposing the Moratoria, Defendants deprived Kenmore Village of its right to exclude others from its property and compelled it to provide housing to individuals who did not pay rent.  Due to the Moratoria, Kenmore Village was unable to evict these individuals.  As a result of this taking, Kenmore Village incurred thousands of dollars in lost rent, interest, late fees, and other unpaid compensation.

59.     Dana and Scott MacKenzie own property in the State of Washington, including property in the City of Burien and King County. By imposing the Moratoria, Defendants deprived the MacKenzies of their right to exclude others from their property and compelled them to provide housing to individuals who did not pay rent.  Due to the Moratoria, the MacKenzies were unable to evict these individuals.  As a result of this taking, the MacKenzies incurred tens of thousands of dollars in property damage, lost rent, interest, late fees, and other unpaid compensation.

60.     Chunfu Simon Wu owns property in the State of Washington, including property in the City of Kirkland and King County. Kenmore Village.  By imposing the Moratoria,

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Defendants deprived Wu of his right to exclude others from his property and compelled him to provide housing to individuals who did not pay rent.  Due to the Moratoria, Wu was unable to evict these individuals.  As a result of this taking, Wu incurred tens of thousands of dollars in lost rent, interest, late fees, and other unpaid compensation.

61.    Karl Jacobs owns property in the State of Washington, including property in the City of Olympia, Washington.  By imposing the Moratoria, Defendants deprived  Jacobs of his right to exclude others from his property and compelled Plaintiff to provide housing to an individual who did not pay rent.  Due to the Moratoria, Jacobs was unable to evict this individual.  As a result of this taking, Jacobs incurred thousands of dollars in lost rent, interest, late fees, and other unpaid compensation.

62.    John and Jennifer Barrett own property in the State of Washington, including property in the City of Everett. By imposing the Moratoria, Defendants deprived the Barretts of their right to exclude others from their property and compelled them to provide housing to individuals who did not pay rent.  Due to the Moratoria, the Barretts were unable to evict these individuals.  As a result of this taking, the Barretts incurred tens of thousands of dollars in property damage, lost rent, interest, late fees, and other unpaid compensation.

63.    Steve Otten owns property in the State of Washington, including property in the City of Spokane.  By imposing the Moratoria, Defendants deprived Otten of his right to exclude others from his property and compelled him to provide housing to individuals who did not pay rent.  Due to the Moratoria, Otten was unable to evict these individuals.  As a result of this taking, Otten incurred tens of thousands of dollars in property damage, lost rent, interest, late fees, and other unpaid compensation.

64.    Beacon Flats owns property in the State of Washington and King County.  By imposing the Moratoria, Defendants deprived Beacon Flats of its rights to exclude others from its property and compelled it to provide housing to individuals who did not pay rent.  Due to the Moratoria, Beacon Flats was unable to evict these individuals.  As a result of this taking, Beacon

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  Flats incurred tens of thousands of dollars in property damage, lost rent, interest, late fees, and

2  other unpaid compensation.

3                  **V.    CLASS ALLEGATIONS**

4        65.     Plaintiffs bring this class action pursuant to CR 23 on behalf of the following

5  Class: All owners of multifamily rental properties in Washington that (a) were barred by the

6  Moratoria from evicting one or more tenants due to nonpayment of rent and (b) are still owed

7  some or all unpaid rents by any such tenant or were unable to recover late fees or other charges

8  barred by the Moratoria from any such tenant ("Class Members").

9        66.     Excluded from the Class is: (1) the Court (including any judge or magistrate

10  presiding over this action and any members of their families); (2) Defendant Ferguson and any

11  members of his family; (3) Plaintiffs' counsel, Class counsel and Defendant's counsel; (4)

12  persons who properly execute and file a timely request for exclusion from the Class; (5) persons

13  whose claims in this matter have been finally adjudicated on the merits or otherwise released; (6)

14  persons who have received full compensation for unpaid rents from tenants, Defendants, or

15  another source; and (7) the legal representatives, successors, and assigns of any such excluded

16  persons.

17        67.     **Numerosity**: The Class Members are so numerous that joinder of all members is

18  impracticable.  The precise number of Class Members is unknown to Plaintiffs at this time but is

19  believed to include thousands of persons who can be identified through publicly available

20  sources, including Defendants' records and other public records.

21        68.     **Typicality:** Plaintiffs' claims are typical of the claims of the Class Members, who

22  have been similarly injured by the Moratoria and Defendants' related actions.  The claims of

23  Plaintiffs and the Class Members arise from the same conduct by Defendants and are based on

24  the same legal theories.  Defendants acted or refused to act on grounds generally applicable to

25  the Class, and the Moratoria and Defendant's related actions challenged herein applied equally

26  and uniformly to each Class Member, including Plaintiffs.  Plaintiffs do not have any interest

27  that is in conflict with the interests of the Class Members.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

69. **Predominant Common Questions**: Common questions of law and fact exist as to all Class Members and predominate over any questions affecting solely individual Class Members. Common questions for the Class include whether the Moratoria effected *per se* takings in violation of the Fifth and Fourteenth Amendments to the United States Constitution, whether Defendants have provided just compensation to the Class Members, and the appropriate measure of just compensation for the property rights taken by the Defendants.

70. **Adequate Representation**: Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions, including constitutional claims. Plaintiffs have no interest that is antagonistic to the interests of the Class, and Defendants have no defenses unique to any plaintiff. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of Class Members, and they have the resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the interests of the other Class Members.

71. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all Class Members is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single, capable court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making. A class action is a particularly efficient and appropriate procedure in this case because absent a class action, Defendants would maintain an unconscionable economic advantage over individual Class Members. Individual plaintiffs have limited resources and could be outspent many times over by Defendants, who are defended by the hundreds of attorneys employed by the Washington State Office of the Attorney General. Moreover, the recovery available to many Class Members would not cover the cost of litigation against Defendants. Additionally, Defendant's course of conduct described herein is common to

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    each Class Member, and maintaining individual actions would create a risk of inconsistent

2    results.

### FIRST CAUSE OF ACTION

**Inverse Condemnation – Uncompensated *Per Se* Taking in Violation of the Fifth and**

**Fourteenth Amendments to the United States Constitution**

**(*Against All Defendants*)**

7        72.       Plaintiffs incorporate herein by reference each and every allegation contained in

8    the preceding paragraphs of this Complaint as though fully set forth herein.

9        73.       The Takings Clause of the Fifth Amendment to the United States Constitution,

10   made applicable to the States through the Fourteenth Amendment, provides that private property

11   shall not "be taken for public use, without just compensation."  The Takings Clause prevents

12   "Government from forcing some people alone to bear the public burdens which, in all fairness

13   and justice, should be borne by the public as a whole."  *Lingle v. Chevron Corp.*, 544 U.S. 528,

14   537 (2005) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

15       74.       "When the government physically acquires private property for a public use, the

16   Takings Clause imposes a clear and categorical obligation to provide the owner with just

17   compensation."  *Cedar Point Nursery v. Hassid*, 594 U.S. at 147.  As the Supreme Court recently

18   reaffirmed, the government commits a physical taking when it either "formally condemn[s]

19   property," "physically takes possession of property without acquiring title to it," or "when it

20   occupies property."  *Id.*  "These sorts of physical appropriations constitute the clearest sort of

21   taking, and [courts] assess them using a simple, *per se* rule: The government must pay for what it

22   takes."  *Id.* [citations and quotation marks omitted].  This rule applies with equal vigor

23   regardless of whether the government "appropriat[es] private property for itself or a third party."

24   *Id.*

25       75.       The Supreme Court has also repeatedly reaffirmed that any "public benefit"

26   derived from a physical taking is irrelevant to a court's takings analysis: "[O]ur cases uniformly

27   have found a taking to the extent of the occupation, without regard to whether the action

CLASS ACTION COMPLAINT - 18

achieves an important public benefit or has only minimal impact on the owner." *Loretto v. TeleprompterManhattan CATV Corp.*, 458 U.S. 419, 435 (1982).

76.    At all relevant times, Plaintiffs and other Class Members owned property in the State of Washington.

77.    By imposing the Moratoria, Defendants effected a physical invasion and *per se* taking of property owned by Plaintiffs and other Class Members.

78.    Specifically, the Moratoria here compelled "physical occupations" that the United States Supreme Court has consistently held to constitute *per se* categorical takings where the government "must pay for what it takes." *Cedar Point Nursery,* 594 U.S. at 147.  The Moratoria required that the Class Members continue furnishing their properties—indefinitely—to defaulting and nonpaying former tenants whose contractual right to occupy the premises had terminated.  By stripping the Class Members' longstanding right to institute unlawful detainer proceedings, Defendants deprived Plaintiffs of the only lawful means to physically remove defaulting tenants from their properties.  Defendants thus took from the Class Members their fundamental right to exclude—a right that "is 'one of the most treasured' rights of property ownership." *Id.* at 2072 (quoting *Loretto,* 458 U.S. at 435).  The Moratoria thus constitute "government-authorized physical invasions . . . requiring just compensation." *Id.* at 2073.

79.    The monetary value of the property right to exclude is clearly demonstrated by the damages the Class Members suffered due to the deprivation of that right.  By compelling the physical occupation of the Class Members' property by nonpaying trespassers, Defendants prevented the Class Members from renting that property to readily available paying tenants.  The Moratoria therefore damaged the Class Members in the amount of the rental income they would have received but for Defendants' taking of their right to exclude.

80.    The theoretical ability to eventually pursue past-due rent from nonpaying former tenants—who have, by definition, already demonstrated their unwillingness or inability to pay despite their legal obligation to do so—is illusory, at best, and does not remedy Defendants' taking.  A *per se* physical taking occurred in every instance where the Moratoria barred a Class

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Member from evicting a defaulting tenant; the nominal ability to attempt to locate and thereupon later seek payment from former tenants only provides just compensation to the extent the Class Members *actually receive compensation*.

81.    Additionally, the Moratoria ban Plaintiffs from recovering any interest or late fees on missed rent, thereby depriving Plaintiffs of the constitutional right to the time value of money. *See Fowler v. Geurin*, 899 F.3d 1112, 1118–19 (9th Cir. 2018) ("Because the right to daily interest is deeply ingrained in our common law tradition, this property interest is protected by the Takings Clause[.]").

82.    It is irrelevant that the Moratoria only temporarily compelled the uncompensated physical occupation of Plaintiffs' property because, as the Supreme Court recently clarified, "physical appropriation is a taking whether it is permanent or temporary." *Cedar Point Nursery*, 594 U.S. at 147; *see also id.* at 153–54 (collecting cases).

83.    In short, through the Moratoria, Defendants commandeered private property for the public purpose of providing housing to individuals affected by the fallout from COVID-19. The Moratoria and the enforcement thereof have caused a physical taking of Plaintiffs' property without the just compensation required under the Takings Clause of the Fifth Amendment to the U.S. Constitution.

84.    Plaintiffs are therefore entitled to receive just compensation for the property rights that Defendant took in violation of the Fifth Amendment, in an amount to be determined by the jury at trial.

85.    Plaintiff has engaged counsel to preserve a common fund for, provide a substantial benefit to, and vindicate the constitutional rights of the Class Members.  Plaintiffs are therefore entitled to an award of attorneys' fees and expenses, costs, and disbursements as allowed by law and equity.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**SECOND CAUSE OF ACTION**

**42 U.S.C. § 1983 – Uncompensated *Per Se* Taking in Violation of the Fifth and Fourteenth Amendments to the United States Constitution**

**(*Against Defendant Ferguson and the Local Government Defendants*)**

86.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

87.    For the reasons explained above, the Moratoria effected an uncompensated taking under the Fifth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment.

88.    Plaintiffs are therefore entitled to receive just compensation for the property rights that Defendant took in violation of the Fifth Amendment and any and all other damages under 42 U.S.C. § 1983 *et seq.*

89.    Plaintiffs are also entitled to an award of attorneys' fees and expenses, costs, and disbursements pursuant to 42 U.S.C. § 1988 and as allowed by law and equity.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs now respectfully pray as follows:

A.    Certify the proposed class, appoint Plaintiffs as class representatives, and appoint undersigned counsel as class counsel;

B.    On the First Claim for Relief, for an order and judgment against Defendants, and each of them, determining that Defendants' Moratoria and related actions effected an uncompensated taking of private property, awarding the Class Members just compensation in an amount to be determined by jury, and awarding litigation expenses including reasonable attorneys' fees, expert fees, and any other expenses, costs, or disbursements incurred herein;

C.    On the Second Claim for Relief, for an order and judgment against Defendants, and each of them, awarding just compensation in the form of damages pursuant to 42 U.S.C. §§ 1983 *et seq.* in an amount to be determined by jury and litigation expenses including reasonable

CLASS ACTION COMPLAINT - 21

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  attorneys' fees, expert fees, and any other expenses, costs or disbursements incurred herein

2  pursuant to 42 U.S.C. § 1988; and

3       D.       Such other and further relief as the Court deems just and equitable.

4       DATED this 18th day of December, 2025.

5                                    Davis Wright Tremaine LLP
6                                    Attorneys for Plaintiffs

7
                                     By: *s/ Chris Swift*
8                                        Chris Swift, WSBA #63299
                                         John DiLorenzo, Jr. (*pro hac vice* pending)
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CLASS ACTION COMPLAINT - 22