The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CEDARLAND HOMES LLC; ANDREW LAN; 2310 YALE APPTS., LLC; WEST/FREEMAN PROPERTIES L.L.C.; KENMORE VILLAGE 2017, LLC; DANA MACKENZIE; SCOTT MACKENZIE; CHUNFU SIMON WU; KARL JACOBS; JOHN BARRETT; JENNIFER BARRETT; STEVE OTTEN; BEACON FLATS PROPERTIES LLC,

                      Plaintiffs,

        v.

GOVERNOR ROBERT FERGUSON; the STATE OF WASHINGTON; the CITY OF SEATTLE; KING COUNTY; the CITY OF KENMORE; the CITY OF BURIEN; the CITY OF KIRKLAND; the CITY OF OLYMPIA; the CITY OF EVERETT; and the CITY OF SPOKANE,

                      Defendants.

No. 3:26-cv-05090-BJR

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

**Note on Motion Calendar: April 3, 2026**

RESPONSE TO MOTION TO DISMISS (3:26-cv-05090-BJR) -

Davis Wright Tremaine LLP
LAW OFFICES
560 SW 10th Avenue, Suite 700
Portland, OR  97205-2702
503.241.2300 main · 503.778.5299 fax

## I.    INTRODUCTION

Defendants—the Governor and State of Washington and eight local governments—responded to the COVID-19 pandemic by compelling Plaintiffs and similarly situated property owners to provide compulsory public housing to third parties who had no contractual right to occupy Plaintiffs' property.  By appropriating property owners' right to exclude third parties—long recognized as one of the most fundamental rights of property ownership—Defendants effected a *per se* physical taking on an unprecedented scale.  Under the Fifth and Fourteenth Amendments to the United States Constitution, Defendants may have the power to take private property rights for public purposes in this way, but that power is subject to "a simple, *per se* rule: The government must pay for what it takes."  *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148 (2021).  But Defendants refuse to do so.

Plaintiffs filed their Complaint in Washington state court seeking the just compensation to which they are entitled under the United States Constitution.  Defendants removed to this Court and now move to dismiss, relying on Ninth Circuit decisions that erroneously adopt a categorical rule that once property owners enter a lease agreement with a third party, they forfeit the right to exclude that person from their property even after the lease agreement terminates for nonpayment.  As two other Circuit Courts have recognized, these Ninth Circuit decisions rely on misreading United States Supreme Court precedent and improperly deprive Plaintiffs and similarly situated property owners of their constitutional rights.  While these flawed Ninth Circuit decisions would not have been binding on the state court in which Plaintiffs filed, Plaintiffs acknowledge that this Court is encumbered by the Ninth Circuit's error.

## II.    FACTUAL & PROCEDURAL BACKGROUND

As alleged in detail in Plaintiffs' Complaint, Defendants adopted a series of executive orders and ordinances (the "Moratoria") that prohibited property owners—including each Plaintiff—from excluding individuals from their property who breached their lease agreements by failing to pay rent. Dkt. 1-1 ("Compl.") ¶¶ 1–2, 31–41, 50–64.  The Moratoria provided no compensation to the property owners compelled to provide housing to nonpaying former lessees,

RESPONSE TO MOTION TO DISMISS (3:26-cv-05090-BJR) - 1

although they required those property owners to continue meeting their contractual and statutory obligations as lessors—even as the Moratoria abrogated the material obligations of lessees and eliminated all contractual remedies housing providers ordinarily have available when tenants breach their lease provisions. *Id.* ¶¶ 42, 44–46.  Due to the Moratoria, nonpaying former tenants could continue to occupy property despite having no ongoing permission or contractual right to do so, while shifting the cost of utilizing water, power, trash, sewage, and other services for which the housing providers continued to pay without reimbursement. *Id.* ¶ 42.  Every month a housing provider was prevented from renting its unit to a paying tenant was a month for which the housing provider lost revenue and could not mitigate any damages. *Id.* ¶ 43.  Thus, the Moratoria forced Plaintiffs to allow nonpaying former tenants to occupy their property without compensation for an indefinite and often lengthy period. *Id.* ¶¶ 43, 50–64.  This compelled physical occupation constituted a *per se* taking of Plaintiffs' property right to exclude. *Id.*

## III.    LEGAL STANDARD

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  A complaint need only allege "enough facts to state a claim to relief that is plausible on its face," not to prove the merits of the case. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility simply requires that the facts alleged allow the court to reasonably infer that the defendant is liable; it does not require probability or detailed factual development at the pleading stage. *Iqbal*, 556 U.S. at 678.  "A complaint should not be dismissed unless a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cahill*, 80 F.3d at 338.

## IV.    ARGUMENT

### A.    Defendants' Moratoria Constituted *Per Se* Physical Takings of Plaintiffs' Property Rights, and the Ninth Circuit Erred by Rejecting Similar Claims.

Plaintiffs allege Defendants' Moratoria effected *per se* physical takings of Plaintiff's

RESPONSE TO MOTION TO DISMISS (3:26-cv-05090-BJR) - 2

Davis Wright Tremaine LLP
LAW OFFICES
560 SW 10th Avenue, Suite 700
Portland, OR  97205-2702
503.241.2300 main · 503.778.5299 fax

property rights.

Takings Clause jurisprudence distinguishes between two primary categories of takings: (1) *per se* physical takings and (2) regulatory takings.  The government commits a *per se* physical taking where it "uses its power of eminent domain to formally condemn property," "physically takes possession of property without acquiring title to it," "occupies property—say, by recurring flooding as a result of building a dam," or otherwise "physically appropriates property .…" *Cedar Point*, 594 U.S. at 147–49.  Regulatory takings arise from "regulations prohibiting private uses[.]"  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 323 (2002).  For *per se* physical takings, "[w]hen the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner, regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof."  *Id.* at 322 (internal citation omitted).  To determine whether compensation is required for a regulatory taking, by contrast, courts generally conduct complex factual assessments of the purposes and economic effects of governmental actions governed by the standards set forth in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978).

Here, Defendants have taken Plaintiffs' right to exclude nonpaying former tenants from their property.  As discussed below, Supreme Court precedent confirms that appropriation constitutes a *per se* physical taking that entitles Plaintiffs to just compensation.  The Ninth Circuit, however, has erroneously viewed housing providers as second-class property owners whose rights may be taken without recourse.  Plaintiffs recognize that this Court is bound by the Ninth Circuit's misapplication of Supreme Court precedents, but Plaintiffs nevertheless explain the basis of the Ninth Circuit's error below.

### 1. Supreme Court Precedent Establishes that Depriving Property Owners of the Right to Exclude is a *Per Se* Physical Taking.

Defendants' Moratoria prohibited Plaintiffs from exercising their fundamental right to exclude third parties from their property who had no legal right to be there.  Under clear

RESPONSE TO MOTION TO DISMISS (3:26-cv-05090-BJR) - 3

Davis Wright Tremaine LLP
LAW OFFICES
560 SW 10th Avenue, Suite 700
Portland, OR  97205-2702
503.241.2300 main · 503.778.5299 fax

Supreme Court precedent, this deprivation of Plaintiffs' property rights—even though it was temporary—constituted a *per se* physical taking for which Defendants must compensate Plaintiffs.

In *Cedar Point*, the Supreme Court recently reaffirmed that "[t]he right to exclude is 'one of the most treasured' rights of property ownership," and that "appropriations" of that right "are *per se* physical takings, not use restrictions subject to *Penn Central* …."  594 U.S. at 148–49, 158 (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982) (holding statute requiring landlords to allow third parties to access properties to install television facilities constituted *per se* physical taking)).  The Court explained:

> [W]e have stated that the right to exclude is "universally held to be a fundamental element of the property right," and is "one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Kaiser Aetna v. United States*, 444 U.S. 164, 176, 179–180, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979); . . . see also Merrill, Property and the Right to Exclude, 77 Neb. L. Rev. 730 (1998) (calling the right to exclude the "*sine qua non*" of property).
>
> Given the central importance to property ownership of the right to exclude, it comes as little surprise that the Court has long treated government-authorized physical invasions as takings requiring just compensation.

*Id.* at 150.

There, the Court confronted a decades-old California regulation that declares the rights of "agricultural employees" to include "the right of access by union organizers to the premises of an agricultural employer for the purpose of meeting and talking with employees and soliciting their support[.]"  Cal. Code Regs. tit. 8, § 20900(e).  Thus, if a property owner chooses to operate as an "agricultural employer" and employ agricultural employees on its property, it must periodically permit labor organizers to access its property for several hours after receiving written notice.  *Id.*  In other words, this regulation impacts only the rights of property owners who have voluntarily chosen to use their property for a specific commercial purpose and to hire employees with an express statutory right to coordinate with labor organizers at work.  *Id.*

Nevertheless, the Court held that the regulation constituted a *per se* physical taking

RESPONSE TO MOTION TO DISMISS (3:26-cv-05090-BJR) - 4

because it barred agricultural employers from excluding third parties from physically occupying their property: "Rather than restraining the growers' use of their own property, the regulation appropriates for the enjoyment of third parties the owners' right to exclude." *Cedar Point*, 594 U.S. at 149.  As such, the Court rejected the notion that the regulation simply regulated the employer-employee relationship and that the *Penn Central* regulatory takings framework should therefore apply: "We cannot agree that the right to exclude is an empty formality, subject to modification at the government's pleasure. On the contrary, it is a fundamental element of the property right, that cannot be balanced away. … With regard to the complexities of modern society, we think they only reinforce the importance of safeguarding the basic property rights that help preserve individual liberty, as the Founders explained." *Id.* at 158 (internal quotation marks & citations omitted).

Finally, the Court also held that violations of the right to exclude remain *per se* takings even if they are temporary.  Although earlier cases had indicated that temporary takings should be viewed as regulatory takings and only permanent occupations could constitute *per se* physical takings, the Court clarified that *per se* takings arose from physical occupation regardless of duration: "[A] physical appropriation is a taking whether it is permanent or temporary," and "[t]he duration of an appropriation—just like the size of an appropriation, …bears only on the amount of compensation." *Cedar Point*, 594 U.S. at 153 (citing *Loretto*, 458 U.S. at 436–37); *see also id.* ("[P]hysical invasions constitute takings even if they are intermittent as opposed to continuous.").

Following *Cedar Point*, multiple appellate courts across the country have agreed that property owners may assert *per se* physical takings claims against eviction moratoria.  The Supreme Court weighed in first.  Shortly after deciding *Cedar Point*, the Supreme Court vacated the stay of a district court judgment invalidating the Centers for Disease Control and Prevention's ("CDC") eviction moratorium.  Although the case addressed the scope of the CDC's authority to issue the moratorium, the Court's per curiam opinion cited *Loretto*—where the Court held that the deprivation of a landlord's right to exclude constituted a *per se* physical

RESPONSE TO MOTION TO DISMISS (3:26-cv-05090-BJR) - 5

Davis Wright Tremaine LLP
LAW OFFICES
560 SW 10th Avenue, Suite 700
Portland, OR  97205-2702
503.241.2300 main · 503.778.5299 fax

taking—and emphasized that the CDC's eviction moratorium burdened the same right:

"***preventing [landlords] from evicting tenants who breach their leases intrudes on one of the most fundamental elements of property ownership—the right to exclude***." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 765 (2021) (emphasis added); *see also Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 992 F.3d 518, 523 (6th Cir. 2021) (denying stay of judgment invalidating CDC eviction moratorium on grounds that CDC's statutory authority did not extend to interference with right to exclude) (citing *Terkel v. CDC*, 521 F. Supp. 3d 662, 671 (E.D. Tex. 2021) (holding moratorium exceeded CDC's authority and observing "eviction is fundamentally the vindication of the property owner's possessory interest")).

Next, relying on *Cedar Point*, the Eighth Circuit held that a property owner could assert a *per se* physical taking claim against an eviction moratorium similar to those at issue here. *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 733 (8th Cir. 2022). There, the court held that the plaintiff had sufficiently alleged a physical taking requiring just compensation based on executive orders ("EOs") that temporarily prohibited eviction due to nonpayment. The Eight Circuit explained that the executive orders plausibly effected a physical taking because they forced landlords to accept the physical occupation of their property regardless of whether tenants provided compensation. *Id.*. Relying on *Cedar Point*, the court also held that it was immaterial whether the invasion was "permanent or temporary," "intermittent as opposed to continuous," or effected through third parties rather than direct government occupation. *Id.* Because the orders forbade termination of ongoing leases even after material violations, the court concluded that the plaintiff had sufficiently alleged deprivation of the right to exclude without compensation. *Id.* The court also agreed that the appropriate measure of just compensation included the plaintiff's lost rental income: "Among the damages, Heights alleged it was deprived of its expected return on investment in the form of rental income. These alleged damages are sufficient to plausibly give rise to a Fifth Amendment takings claim." *Id.* at 735.

Most recently, the Federal Circuit reached the same conclusion in *Darby Development*

RESPONSE TO MOTION TO DISMISS (3:26-cv-05090-BJR) - 6

*Co. v. United States*, 112 F.4th 1017, 1034–37 (Fed. Cir. 2024).  There, the court held the CDC's federal eviction moratorium (the "Order") qualified as a "physical taking" under *Cedar Point*:

> Just as in [*Cedar Point*]—where, absent the regulation, the employers could have excluded the union organizers from their property,—here Appellants alleged (and there has been no dispute) that, absent the Order, they could have evicted (or "excluded" from their property) at least some non-rent-paying tenants … . And, just as the *Cedar Point* regulation resulted in government-authorized physical invasion—having "appropriate[d] for the enjoyment of third parties" the employers' right to exclude—here too Appellants alleged that the Order, by removing their ability to evict non-rent-paying tenants, resulted in "government-authorized invasion, occupation, or appropriation" of their property …. *See also Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 274, 144 S.Ct. 893, 218 L.Ed.2d 224 (2024) (observing that a physical taking occurs if the government physically appropriates property "or otherwise interfere[s] with the owner's right to exclude others from it" (citing *Cedar Point*, 594 U.S. at 149–52, 141 S.Ct. 2063)). Moreover, even apart from these significant similarities, at a fundamental level, we cannot reconcile how forcing property owners to occasionally let union organizers on their property infringes their right to exclude, while forcing them to house non-rent-paying tenants (by removing their ability to evict) would not.

*Id.* at 1034–35 (citations omitted).

Here, as in these cases, the Moratoria effected *per se* physical takings by "appropriat[ing] for the enjoyment of third parties the owners' right to exclude." *Cedar Point*, 594 U.S. at 149. Once Plaintiffs' former tenants' lease agreements terminated for nonpayment, those third parties no longer had any right to occupy Plaintiffs' properties.  The Moratoria, however, expressly prohibited Plaintiffs from excluding the nonpaying third parties, thereby compelling the physical occupation of Plaintiffs' property and taking "'one of the most treasured' rights of property ownership." *Id.*  As *Cedar Point* recognized, the temporary duration of this compulsory physical occupation does not alter the fact that it was a taking, it merely "bears only on the amount of compensation" to which Plaintiffs are entitled for that taking.  *Id.* at 154.  Nor do Defendants' public policy goals allow them to evade their obligation to provide just compensation for taking Plaintiffs' property rights.  The fact that the public benefited at private expense is precisely why the United States Constitution requires the public to pay for those benefits.  In short, the right to exclude "is a 'fundamental element of the property right,' that cannot be balanced away," and

RESPONSE TO MOTION TO DISMISS (3:26-cv-05090-BJR) - 7

Supreme Court precedent requires Defendants provide just compensation for taking that fundamental right. *Id.* at 158 (internal citation omitted).

### 2. The Ninth Circuit Erroneously Held that Rental Property Owners Are Not Entitled to Just Compensation When the Government Takes Their Right to Exclude.

But the Ninth Circuit disagrees, and Plaintiffs acknowledge that this Court is bound by the Ninth Circuit's misreading of Supreme Court precedent. In *El Papel, LLC v. City of Seattle*, the Ninth Circuit rejected a Takings Clause claim against Seattle's eviction moratorium. 2023 WL 7040314, at *2 (9th Cir. Oct. 26, 2023); *see also GHP Mgmt. Corp. v. City of Los Angeles*, 2024 WL 2795190, at *1 (9th Cir. May 31, 2024) (same); *Jevons v. Inslee*, 2023 WL 5031498, at *2 (9th Cir. Aug. 8, 2023) (dismissing takings claim as moot because it sought only prospective relief and not just compensation).[1] In these cases, the Ninth Circuit misconstrued *Yee v. City of Escondido*, 503 U.S. 519 (1992), as establishing a categorical rule that the government may take rental property owners' right to exclude without paying just compensation on the grounds that, at one point, lessees were permitted onto the property. But nothing in *Yee* purports to strip rental property owners of their rights in this way—to the contrary, *Yee* supports *Plaintiffs'* position, not Defendants.

In *Yee*, the plaintiffs challenged a mobile home rent control ordinance that required the City Council to approve rent increases. *Id.* at 524–25. Conceding that "ordinary rent control statutes regulating housing throughout the country" do not amount to a taking, the plaintiffs attempted to state a Takings Clause challenge to the rent control ordinance by arguing that, when considered in conjunction with various other laws, limiting rent increases effectively constituted a physical invasion. *Id.* at 526–27. The Supreme Court was not convinced. Noting that "the

---

[1] Plaintiffs filed their Complaint in state court, and noted that the Washington Supreme Court had rejected takings claims under Washington law, but had not conclusively addressed takings claims under federal law. *Gonzales v. Inslee*, 535 P.3d 864, 873 n.9 (Wash. 2023) (acknowledging "that the petitioners have been made to bear the cost of accommodating a public need" but rejecting state law takings claim). Defendants removed to federal court, where Plaintiffs continue to assert their claims based on good faith arguments for extending, modifying, or reversing existing Ninth Circuit law or for establishing new law.

RESPONSE TO MOTION TO DISMISS (3:26-cv-05090-BJR) - 8

Escondido rent control ordinance only limits rents" and that the constitutionality of the other cited statutes "has never been at issue in this case," the Court rejected the plaintiffs' takings claim because the challenged ordinance "merely regulate[d] petitioners' *use* of their land by regulating the relationship between landlord and tenant." *Id.* at 528, 531 n.*; *see also id.* at 529 (explaining permissible landlord-tenant regulations include rent control laws and prohibitions on discrimination); *see also id.* at 529–30 (observing that "[o]rdinary rent control often transfers wealth from landlords to tenants" and "the existence of the transfer in itself does not convert regulation into physical invasion").

Critically, "neither the city nor the State compels petitioners, once they have rented their property to tenants, to continue doing so." *Id.* at 527–28. Rather, the plaintiffs retained the right to evict tenants for nonpayment or simply because "a park owner … wishes to change the use of his land" in accordance with a statutory procedure. *Id.* at 524, 528.[2] This was significant, the Court explained, because the law would present a potential taking if it compelled property owners to either rent their property in the first instance *or to continue allowing an occupation over their objection*: "A different case would be presented were the statute, on its face or as applied, to compel a landowner over objection to rent his property ***or to refrain in perpetuity from terminating a tenancy***." *Id.* at 528 (emphasis added).[3] In fact, far from stripping rental property owners of their right to exclude—as the Ninth Circuit and Defendants erroneously

---

[2] Because the plaintiffs had not actually attempted to change the use of their property, the Court declined to consider the plaintiffs' as-applied challenges to the complexities of that statutory process. *Yee*, 503 U.S. at 528.

[3] When *Yee* was decided, the Court still distinguished between temporary and permanent physical occupations. As discussed above, *Cedar Point* rejected that distinction, holding that it is the physical nature of an appropriation that makes it a per se taking, not its duration. 594 U.S. at 152–53. Thus, the fact that *Yee* recognized a permanent deprivation of the right to evict would amount to a physical taking means that the same is true for a shorter deprivation of that right. *See id.*; *see also Darby*, 112 F.4th at 1036 ("[T]he government argues that the Order did not prevent evictions *in perpetuity*. But the Supreme Court confirmed in *Cedar Point* that even temporary physical appropriations are physical takings. The mere fact that the Order did not extend 'in perpetuity' therefore does not preclude it from having effected a physical taking.") (internal citations omitted).

RESPONSE TO MOTION TO DISMISS (3:26-cv-05090-BJR) - 9

Davis Wright Tremaine LLP
LAW OFFICES
560 SW 10th Avenue, Suite 700
Portland, OR  97205-2702
503.241.2300 main · 503.778.5299 fax

contend—*Yee* confirmed that "the 'right to exclude' is doubtless … 'one of the most essential sticks in the bundle of rights that are commonly characterized as property,'" and "a landlord's ability to rent his property may not be conditioned on his forfeiting the right to compensation for a physical occupation." *Id.* at 528, 531 (quoting *Kaiser Aetna*, 444 U.S. at 176; *Loretto*, 458 U.S. at 439 n.17). In *Yee*, the rent control ordinance simply did not impact the plaintiffs' right to exclude. But here, the Moratoria did take Plaintiffs' right to exclude, and nothing in *Yee* holds otherwise. *See, e.g.*, *Heights Apartments*, 30 F.4th at 733 (distinguishing *Yee* because "[t]he rent controls in *Yee* limited the amount of rent that could be charged and neither deprived landlords of their right to evict nor compelled landlords to continue leasing the property past the leases' termination"); *Darby*, 112 F.4th at 1035 (holding "nothing in *Yee* … immunizes—as a *categorical* matter—government action implicating the landlord-tenant relationship from being treated as a physical taking," and explaining "*Yee* was fundamentally a rent-control case" and, "[u]nlike here, the laws at issue in *Yee* expressly *permitted* eviction for nonpayment of rent").

The Ninth Circuit's (and Defendants') misinterpretation of *Yee* rests on the assumption that once a property owner invites a lessee onto its property, the government may prohibit the property owner from ever again excluding that individual—even if he ceases to be a lessee. As just discussed, *Yee* does not support that assumption. Rather, *Yee* held only that restricting a property owner's right to raise rents on an existing lessee does not amount to a physical invasion because the property owner retains the right to exclude. Defendants attempt to fill the gap by asserting that *Cedar Point* recognized a distinction between "how a business generally open to the public may treat individuals on the premises" and "regulations granting a right to invade property closed to the public." Mot. at 11 (quoting *Cedar Point*, 594 U.S. at 157). According to Defendants, rental property owners fall into the former category and such properties have no protectable right to exclude. Defendants' argument fails on both counts.

*First*, rental properties are not "generally open to the public"—property owners enter lease agreements with specific individuals whose contractual right to access the property is contingent on performing their own obligations under the parties' agreement. By contrast, the

RESPONSE TO MOTION TO DISMISS (3:26-cv-05090-BJR) - 10

Davis Wright Tremaine LLP
LAW OFFICES
560 SW 10th Avenue, Suite 700
Portland, OR  97205-2702
503.241.2300 main · 503.778.5299 fax

"business generally open to the public" discussed in *Cedar Point* was a 21-acre outdoor shopping center visited by 25,000 people daily. *See Cedar Point*, 594 U.S. at 157 (citing *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 77–78 (1980)). In *PruneYard*, a state court decision required the shopping center to allow visitors to distribute pamphlets and collect petition signatures subject to time, place, and manner restrictions, and the Supreme Court held that this decision did not effect a *per se* taking because the premises were open to all and the First Amendment activities had no negative economic impact. 447 U.S. at 83–84. Defendants' unsupported assertion that an apartment "is no different" than a shopping mall, Mot. at 11, is baseless. Except as set forth in the terms of Plaintiffs' lease agreements, Plaintiffs' properties are "closed to the public" to at least as great an extent as the large agricultural operation at issue in *Cedar Point*.

*Second*, property owners do not forfeit their right to exclude by granting invitees conditional access to their property. In *PruneYard*, for example, the shopping mall invited the public onto its premises during business hours, but nothing in the Court's decision suggests that the government could compel continued occupation of the mall by members of the public after it closed. At closing time, former invitees—whether petitioners or paying customers—become trespassers whom the property owner has the right to exclude, and the government may not take that right without providing just compensation. Likewise, the holding in *Cedar Point* contains no carveout for former invitees. If, for instance, the property owner in *Cedar Point* fired an employee, that former employee would cease to be an invitee upon termination of the employment contract. Nothing in *Cedar Point* suggests that the government could compel the property owner to allow the former employee to continue to physically occupy the property without committing a taking. Under Defendants' theory, however, because the property owner originally invited the then-employed worker onto its property pursuant to a contractual relationship, the government may prevent the property owner from excluding the now-fired worker even after the contractual relationship ends—after all, Defendants might add, the state has broad authority to regulate the employer-employee relationship. But Defendants' once-an-

Davis Wright Tremaine LLP
LAW OFFICES
560 SW 10th Avenue, Suite 700
Portland, OR 97205-2702
503.241.2300 main · 503.778.5299 fax

invitee-always-an-invitee theory is incorrect in each of these instances, and it is also incorrect in the landlord-tenant context.[4]  Once a lease agreement terminates due to nonpayment, the former lessee is no longer an invitee and no longer has a contractual right to occupy the lessor's private property any more than does a fired employee or erstwhile customer after closing.  "At bottom, just because tenants (or other occupiers of property) were at one point 'invited' does not mean that their continued, government-compelled occupation cannot, under any circumstances, be treated as a physical taking." *Darby*, 112 F.4th at 1036.  The Ninth Circuit erred by holding otherwise, as Plaintiffs intend to argue on appeal.

### 3.    Defendants' Arguments Regarding Interest Are Irrelevant.

Next, Defendants contend that Plaintiffs cannot state a claim for a taking based on Plaintiffs' allegations regarding interest and late fees.  These arguments are irrelevant to this motion, however, because Plaintiffs do not assert standalone claims to recover lost interest or fees.  Rather, the Complaint merely alleges that the just compensation to which Plaintiffs are entitled due to Defendants' *per se* physical takings includes these components.  As alleged in the complaint, the right to recover interest as part of a takings claim is well-established, and Defendants fail to cite any authority to show otherwise.  *See, e.g.*, *Knick v. Township of Scott*, 588 U.S. 180, 190 (2019) (noting longstanding principle that "the compensation must generally consist of the total value of the property when taken, plus interest from that time").  Nor can Defendants challenge the methodology for calculating just compensation on the merits as part of a motion to dismiss; the question before the Court is whether Plaintiffs state a claim at the pleading stage, not whether they have already proven the right to a specific measure of monetary relief on the merits.

---

[4] In the 2020-21 fiscal year alone, the Washington State Department of Enterprise Services reports that it entered 178 lease agreements on behalf of the state for privately owned facilities. *See* Wash. State Dep't of Enters. Servs., Annual Lease Facilities Report (Dec. 2021), https://des.wa.gov/sites/default/files/2022-06/2021LeasedFacilitiesReport.pdf.  According to Defendants, the state would not commit a taking if it simply ceased to pay rent for these facilities and continued to occupy them indefinitely, since Defendants claim they may appropriate rental property owners' right to exclude nonpaying tenants without compensation.

Davis Wright Tremaine LLP
LAW OFFICES
560 SW 10th Avenue, Suite 700
Portland, OR  97205-2702
503.241.2300 main · 503.778.5299 fax

**B. Plaintiffs Assert Timely Claims Seeking Just Compensation for Defendants' Per Se Physical Takings.**

Finally, in light of the controlling Ninth Circuit authority discussed above, the Court need not reach Defendants' statute of limitations arguments.  If the Court does so, however, it should deny Defendants' motion to dismiss and hold that both of Plaintiffs' claims are timely.

### 1. Plaintiffs' Inverse Condemnation Claim Is Timely Because It Is Subject to a Ten-Year Limitations Period.

Defendants concede that inverse condemnation claims for *per se* physical takings are subject to a ten-year limitations period.  As discussed at length above, Plaintiffs' claims both seek just compensation for Defendants' *per se* physical takings, and Plaintiffs do not assert regulatory takings claims.  Plaintiffs filed the Complaint well within the ten-year limitations period, and their inverse condemnation claim is therefore timely.  The Court should reject Defendants' attempt to rewrite Plaintiffs' claim to convert it into a supposedly untimely regulatory takings claim, and it should deny Plaintiffs' motion to dismiss Plaintiff's first claim on these grounds.

### 2. Plaintiffs' Section 1983 Claim Is Timely Because It Should Be Subject to a Six-Year Limitations Period.

The Court should also deny Defendant's statute of limitations argument as to Plaintiffs' Section 1983 claim, to the extent it reaches that issue.  Section 1983 creates a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  Section 1988, in turn, states that Section 1983 claims "shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect," but where those laws "are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State" fills the gaps, "so far as the same is not inconsistent with the Constitution and laws of the United States[.]"  42 U.S.C. § 1988(a).  In other words, Section 1988 requires courts to first look to federal law for suitable procedures before turning to compatible state law to fill any

RESPONSE TO MOTION TO DISMISS (3:26-cv-05090-BJR) - 13

Davis Wright Tremaine LLP
LAW OFFICES
560 SW 10th Avenue, Suite 700
Portland, OR  97205-2702
503.241.2300 main · 503.778.5299 fax

gaps. *Wilson v. Garcia*, 471 U.S. 261, 267 (1985), *superseded by statute on other grounds*, *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377–78 (2004).

In *Wilson*, the Court explained that Section 1983 itself does not contain a statute of limitations, and that there was no other federal statute of limitations applicable to the type of claims arising under that statute: tort claims for "an injury to the individual rights of the person." *Id.* at 276–77. After exhausting the potential sources of a federal statute of limitations, the Court turned to state law and held that the state statute of limitations applicable to personal injuries should also apply to Section 1983 claims—since the cognizable Section 1983 claims at that time "plainly sounded in tort" and "Congress unquestionably would have considered the remedies established in the Civil Rights Act to be more analogous to tort claims for personal injury than, for example, to claims for damages to property or breach of contract." *Id.* at 277.

Recently, however, the Supreme Court expanded the scope of Section 1983 to permit claims not just for deprivations of rights sounding in tort, but also claims seeking just compensation for takings in the first instance. *Knick*, 588 U.S. 180. Prior to *Knick*, plaintiffs could only bring a Section 1983 claim arising from a taking if they sought damages for the denial of just compensation after exhausting state inverse condemnation procedures—that is, the Section 1983 claim was not for "compensation *per se* but rather damages for the unconstitutional denial of such compensation." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709–10 (1999) (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194–195 (1985)). *Knick* overruled *Williamson County* and authorized direct claims under Section 1983 for just compensation immediately after the taking occurs, rather than tort claims that could seek damages only for the deprivation of the right to just compensation. 588 U.S. at 190.

The Court expressly equated this newly recognized claim to just compensation claims under the Tucker Act, the statute authorizing inverse condemnation claims against the federal government. *Id.* at 189–91, 194–96, 199–200, 205 (citing 28 U.S.C. § 1491(a)(1)). Unlike pre-*Knick* Section 1983 claims, such claims directly seeking just compensation for a taking are

RESPONSE TO MOTION TO DISMISS (3:26-cv-05090-BJR) - 14

"cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  As such, the determination in *Wilson* that Section 1983 claims are tort claims for which there is no suitable federal statute of limitations does not extend to newly recognized federal inverse condemnation claims brought under Section 1983.  *See Wilson*, 471 U.S. at 277.  While the Supreme Court has not addressed the applicable statute of limitations to these claims, federal law already provides a suitable statute of limitations for compensation claims: the six-year limitations period for Tucker Act claims.  28 U.S.C. § 2501.  Especially given the unique nature of non-tort compensation claims under Section 1983, applying this six-year statute satisfies the first step of the Section 1988 analysis and ensures consistency in the availability of takings compensation claims in federal court, regardless whether the taking was committed by a federal or state actor.

Accordingly, the Court should conclude that, under Section 1988, the "suitable" federal statute of limitations for inverse condemnation claims arising under federal law and asserted under Section 1983 is the limitations period already applied to such claims under the Tucker Act.[5]  Plaintiffs' Section 1983 claim is therefore also timely, and the Court should reject Defendants' motion if it reaches this issue.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs are entitled to just compensation for the *per se* physical takings resulting from Defendants' Moratoria, and, as Plaintiffs will argue on appeal, the Ninth Circuit erred by denying the protections of the Fifth and Fourteenth Amendments to housing providers like Plaintiffs.

---

[5] Alternatively, if the Court declines to incorporate the Tucker Act's six-year statute in accordance with Section 1988, then the applicable state law limitations period for inverse condemnation claims should be applied to these unique claims, rather than the general personal injury statute applicable to pre-*Knick* Section 1983 claims asserting tort theories.  As discussed above, this means a 10-year limitations period would apply here.  So holding does not open the door generally to picking a statute of limitations on a case-by-case basis—which the SC rejected in *Wilson*—rather, it reflects the unique nature of the recently created Section 1983 federal inverse condemnation claim and ensures consistency between the remedies available for Takings Clause just compensation claims regardless of forum.

Davis Wright Tremaine LLP
LAW OFFICES
560 SW 10th Avenue, Suite 700
Portland, OR  97205-2702
503.241.2300 main · 503.778.5299 fax

DATED this 20th day of March, 2026.

Davis Wright Tremaine LLP
Attorneys for Plaintiffs


By *s/ Christopher Swift*
    Christopher Swift, WSBA #63299
    John DiLorenzo, Jr. (*pro hac vice*)
    Matthew Ladew (*pro hac vice*)\
    560 SW 10th Avenue, Suite 700
    Portland, OR  97205-2702
    Telephone: 503-241-2300
    Fax: 503-778-5299
    Email: chrisswift@dwt.com
    Email: johndilorenzo@dwt.com
    Email: mattladew@dwt.com

RESPONSE TO MOTION TO DISMISS (3:26-cv-05090-BJR) - 16

Davis Wright Tremaine LLP
LAW OFFICES
560 SW 10th Avenue, Suite 700
Portland, OR  97205-2702
503.241.2300 main · 503.778.5299 fax